## UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | |
|---|---|
| BARRY GOLDBERG,<br><br>                Plaintiff<br><br>v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA and UNUM GROUP,<br><br>                Defendants | Civil No. 07-87-P-S |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Plaintiff Barry Goldberg brought the instant action against the companies that issued a long-term disability insurance policy to Plaintiff's employer alleging breach of contract (Count I) and tortious interference with contractual relationships (Count II). Now before the Court is Defendants' Motion to Dismiss, which asserts that Plaintiff's claims are preempted by ERISA.  (Docket # 6.)  After consideration of the issues presented by the parties, that Court will grant Defendants' Motion to Dismiss.

## I. MOTION TO DISMISS STANDARD

Pursuant to Rule 12(b)(6) a party is entitled to have a claim against it dismissed when the allegations on which the claim depends "fail[] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a motion under Rule 12(b)(6) the Court must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences in the plaintiff's favor, and determine whether

the complaint, when taken in the light most favorable to the nonmovant, sets forth sufficient facts to support the claim for relief. Clorox Co. v. Proctor & Gamble Commer. Co., 228 F.3d 24, 30 (1st Cir. 2000); LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998). Pursuant to Rule 8(a), the pleader need only make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, despite the liberal pleading standard of Federal Rule of Civil Procedure 8, to survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1967 (2007).

Plaintiff's Amended Complaint refers to three documents that are attached as exhibits to the original Complaint: the Regulatory Settlement Agreement, the policy of insurance and the summary plan description.[1] Ordinarily, a court may not consider any documents outside of the complaint or not expressly incorporated in the complaint on a motion to dismiss, without converting the motion into one for summary judgment. Fed. R. Civ. P. 12(b); Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). Nonetheless, there is a narrow exception "'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff['s] claim; or for documents sufficiently referred to in the complaint.'" Alternative Energy, Inc., 267 F.3d at 33 (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). When a document is central to the plaintiff's complaint, the document "merges into the pleadings" and may be properly considered by the court in determining a motion to dismiss. See id. In this case, the Regulatory Settlement Agreement, the policy of insurance and the summary plan description referenced in the

---

[1] Plaintiff's Amended Complaint incorporates by reference the exhibits filed with the original Complaint. (Amended Complaint at 1.)

Amended Complaint are central to Plaintiff's claims and neither party contests the authenticity of the documents. Thus, in deciding the pending motion, the Court considers the RSA without converting the instant Motion into one for summary judgment.

## II. PLAINTIFF'S AMENDED COMPLAINT

Plaintiff alleges that, prior to May 24, 1996, he was employed full time as a medical malpractice attorney working at the law firm of Goldberg & Goldberg. (Amended Complaint ¶ 8.) Plaintiff was insured "under a group policy providing disability income insurance … underwritten by [Unum Life] for the benefit of employees of the law firm Goldberg & Goldberg." (Id. ¶ 3.) Plaintiff suffered an aortic dissection that required him to stop working. (Id. ¶ 8.) Thereafter, he applied to Unum for benefits in September 1996. (Id.) Unum paid him benefits under the policy through September 2000. (Id.) In September 2000, Unum terminated Plaintiff's benefits. (Id.) Plaintiff appealed Unum's termination decision; however, Unum upheld its decision to terminate benefits. (Id. ¶ 10.)

Plaintiff did not file suit after his benefits were terminated in 2000; however, when in 2005 Unum offered, pursuant to the terms of a Regulatory Settlement Agreement ("RSA") entered into between Unum and the insurance regulators of 49 states, to reassess Plaintiff's claim for benefits, he elected to have Unum Life reassess his claim. (Id. ¶ 11.) On March 20, 2007, Unum Life communicated its final determination not to reconsider payment of additional benefits. (Id.)

## III. DISCUSSION

Plaintiff asserts two claims against Defendants. Count I is a claim for breach of contract, which Plaintiff alleges that Unum Life's "refusal to reinstate the balance of

3

payments due to Goldberg was a breach of duties and responsibilities set forth in the RSA and was a failure of Unum Life's obligation to comply with the terms and conditions of the RSA." (Id. ¶ 12.) Count II is a claim for tortious interference with contractual relationships, which alleges that but for "Unum Group [] interfering with the contractual relationships between the plaintiff and Unum Life arising out of the Regulatory Settlement Agreement the plaintiff would have been paid the long-term disability benefits due under the original disability contract which is the subject of this complaint." (Id. ¶ 21.) Defendants contend that because each of Plaintiff's claims would require the Court to consult and/or interpret the terms of the ERISA regulated policy, those claims are preempted by ERISA and should be dismissed. Plaintiff responds arguing that his "claims for breach of contract and tortious interference with contractual relationships are derived not from Unum's group disability plan itself, but from the terms of the RSA entered into between the Defendants and the insurance regulators of 49 states, of which Goldberg is a third-party beneficiary." Plaintiff's Memorandum in Response to Defendants' Motion to Dismiss (Docket Item No. 9) at 1-2.

### A. Qualified Employee Benefit Plan Regulated by ERISA

The question of whether ERISA applies to a particular plan or program requires an evaluation of the facts combined with an interpretation of the law. Johnson v. Watts Regulator Co., 63 F.3d 1129, 1132 (1st Cir. 1995) (stating that the existence of an ERISA plan is a mixed question of fact and law). Pursuant to ERISA there are two types of "employee benefit plans": employee welfare benefit plans and employee pension benefit plans. This case involves an employee welfare benefit plan. ERISA defines an "employee welfare benefit plan" as any "plan, fund, or program . . . established or

4

maintained by an employer . . . for the purpose of providing . . . through the purchase of insurance or otherwise . . . benefits in the event of . . . disability." 29 U.S.C. § 1002(1).

In the instant case, Plaintiff's Amended Complaint plainly states that the insurance policy in question is a group disability income insurance policy issued by Unum Life Insurance Company of America to Goldberg & Goldberg for the benefit of the law firm's employees. (Amended Complaint ¶ 3 (Plaintiff was insured "under a group policy providing disability income insurance … underwritten by [Unum Life] for the benefit of employees of the law firm Goldberg & Goldberg."); Complaint Exs. B and C.) Plaintiff's Amended Complaint also provides that he was an employee of Goldberg & Goldberg and that he was covered by the plan. (Amended Complaint ¶¶ 6, 8.) Therefore, the policy which Plaintiff alleges covers his claim for disability benefits is an "employee welfare benefit plan" as defined and governed by ERISA.

### B. Preemption of State Law Claims

The Court must now determine whether Plaintiff's state law claims are preempted by ERISA. ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries by regulating the creation and administration of employee benefit plans. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44 (1987). There are two components to ERISA's extensive preemptive force. First, ERISA § 514(a) expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).[2] Second, § 502(a) of ERISA contains a comprehensive scheme of civil remedies to enforce ERISA's provisions. See 29 U.S.C.

---

[2] Section 514(a) is qualified by a "savings clause," which exempts "state law[s] ... which regulat[e] insurance, banking, or securities." from preemption. 29 U.S.C. § 1144(b)(2)(A). Plaintiff does not argue that the savings clause is implicated in this case.

5

§ 1132(a). Thus, the Court must determine whether Plaintiff's claims of state law breach of contract and tortious interference with contractual relationships fall under either of these preemptive provisions.

### 1. Preemption under § 514(a)

The court will begin its discussion with § 514(a) of ERISA, as set forth in 29 U.S.C. § 1144(a). Under this section, Congress specifically preempted "all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Statutory provisions, court decisions, common law causes of action and state law from all other sources are encompassed by ERISA's sweeping preemption clause. 29 U.S.C. § 1144(c)(1) ("State law" is expansively defined under ERISA to include "all laws, decisions, rules, regulations, or other State action having the effect of any law, of any State"); see also Pilot Life Ins. Co., 481 U.S. at 47 (ERISA preempts state law claims for tortious breach of contract, breach of fiduciary duties, and fraud in the inducement arising from improper processing of a claim under a plan). "[T]he question of whether a certain state law is preempted by federal law, is one of congressional intent." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137-38 (1990) (citations omitted). In this respect, the Supreme Court has left no doubt that Congress intended the preemption clause to have an extensive effect. See id. at 138; FMC Corp. v. Holliday, 498 U.S. 52, 58 (1990) ("The preemption clause is conspicuous for its breadth."). The crucial question in determining whether a state law claim is preempted is whether the state action "relates to" an ERISA plan. See 29 U.S.C. § 1144(a).

Although Congress did not define in the statute what it meant by state laws that "relate to" an ERISA benefit plan, the Supreme Court has stated that the words "relate to"

6

are to be given their "broad common-sense meaning" of having "a connection with or reference to . . . a plan." Pilot Life Ins. Co., 481 U.S. at 47.  A claim "relates to" an ERISA plan if "it has a connection with or reference to such a plan," Carlo v. Reed Rolled Thread Die Co., 49 F.3d 790, 793-94 (1st Cir. 1995) (quoting Ingersoll-Rand Co., 498 U.S. at 139), or if "the trier of fact necessarily would be required to consult the ERISA plan to resolve the plaintiff's claims."  Harris v. Harvard Pilgrim Health Care, 208 F.3d 274, 281 (1st Cir. 2000) (concluding that "state-law claims for unfair and deceptive trade practices are preempted by ERISA" because the court necessarily would have to refer to the plan to determine whether the defendant breached its duties).

### a. Breach of Contract Claim

With respect to the breach of contract claim, Plaintiff argues that his claims are not preempted by ERISA because they are "derived not from Unum's group disability plan itself, but from the terms of the [RSA]," and that the RSA is a "contractual agreement separate and apart from an employee welfare benefit plan . . . ."  (Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss (Docket Item No. 9) at 1, 2.)  However, Plaintiff's conclusory arguments, that his claims are not "derived" from the plan and that the RSA is somehow entirely "independent" from the plan, belie the actual allegations in his Amended Complaint.  The heart of Plaintiff's Amended Complaint is Unum's refusal to pay him long-term disability benefits under the terms of an ERISA-governed long-term disability insurance policy that Unum Life issued to Plaintiff's employer.  (Amended Complaint ¶¶ 8-12.)  As relief, Plaintiff seeks payment of "past benefits due under his individual [long-term] disability insurance policy insured by Unum Life plus the amount of all future benefits due under said policies as a result of

7

Defendants' breach of the promises contained within his policy." (Prayer for Relief, Amended Complaint at 6; see also Amended Complaint ¶¶ 11-13.) Because the terms of Plaintiff's policy, an ERISA plan, govern his entitlement to benefits, it would be impossible to determine whether Defendants' decision not to reinstate benefits constituted a breach of contract without consulting and applying the terms of the ERISA plan. Plaintiff's claims therefore not only "relate to" his claim for benefits under the policy, they are "inseparably connected" to that policy. See Zipperer v. Raytheon Co. Inc., 493 F.3d 50, 54 (1st Cir. 2007)(quoting Carlo, 49 F.3d at 794 (finding that plaintiff's misrepresentation claims were related to an ERISA plan and therefore preempted, in part because in order to calculate damages, the court would have to refer directly to the plan).)

Although Plaintiff attempts to avoid preemption through his reliance on the RSA, he does not allege that the RSA in any way sought to alter the terms or conditions of his policy. To the contrary, the Amended Complaint makes clear that the RSA simply provided a process whereby certain claimants could have their claims for benefits under their policies reassessed.[3] (Amended Complaint ¶ 11; Complaint Ex. A at 9-14.) Nor does Plaintiff allege that Unum Life failed to do what it were supposed to do under the terms of the RSA. Instead, Plaintiff's Amended Complaint asserts that he "elected to have Unum Life reassess his claim and participated in the reassessment . . . [and] on March 20, 2007, Unum Life . . . communicated its final determination of unwillingness to reconsider payment of additional benefits." (Amended Complaint ¶ 11.) The breach Plaintiff alleges is Unum's "refusal to reinstate the balance of payments." (Amended Complaint ¶ 12.) It is impossible to consider the breach without consulting and applying

---

[3] The RSA appears only to require that experienced claim representatives employ certain changes in claims handling procedures when reassessing the claims of specified claimants whose benefits had been denied or terminated. (Complaint Ex. A.)

8

the terms of that original disability contract. Otero Carrasquillo v. Pharmacia Corp., 466 F.3d 13, 20 (1st Cir. 2006) (affirming dismissal of Plaintiff's fraudulent inducement claim on ERISA preemption grounds because "the court's inquiry" in resolving that claim "would necessarily be directed to the Plan")(internal quotation omitted); Carlo, 49 F.3d at 794 (holding that plaintiffs misrepresentation claim was preempted by ERISA because damages could not be computed without referring to the severance plan).

Although Plaintiff weakly attempts to avoid preemption by vague references to the RSA, it is abundantly clear that in order to prevail on his breach of contract claim, Plaintiff "must plead, and the court must find, that an ERISA plan exists." Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994); see also Turner v. Fallon Community Health Plan, Inc., 127 F.3d 196, 199 (1st Cir. 1997)("It would be difficult to think of a state law that 'relates' more closely to an employee benefit plan than one that affords remedies for the breach of obligations under that plan."). Clearly, the state law claims in Plaintiff's Amended Complaint are preempted.

### b. Tortious Interference Claim

Similarly, Plaintiff's tortious interference claim "relates to" the original disability plan. Plaintiff alleges that Unum Group tortiously interfered with his contractual relationship with Unum Life. Plaintiff contends that the contract with which Unum Group interfered was the RSA, not his disability insurance policy. (Amended Complaint ¶ 21.) However, here again, Plaintiff seeks damages in the form of benefits allegedly due under the Unum disability policy. (Amended Complaint, ad damnum clause.) Regardless of how Plaintiff attempts to characterize his cause of action, his tortious interference claim "relates" to the plan. Moreover, Plaintiff admits that the "original

9

disability contract [] is the subject of this complaint." (Amended Complaint ¶ 21.) That representation, standing alone, demonstrates that the tortious interference claim "relates" to an ERISA plan.

Both of Plaintiff's state law claims depend on the existence and terms of the group insurance policy providing disability benefits to the employees of the law firm Goldberg & Goldberg and are, therefore, preempted pursuant to § 514(a).

### 2. Preemption under § 502

In addition to § 514 preemption, ERISA provides for complete preemption under § 502(a). Section 502(a)(1)(B) provides: "A civil action may be brought (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Section 502(a), by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief, regardless of how artfully pleaded. A state cause of action that would fall within the scope of this remedial scheme is preempted as conflicting with the intended exclusivity of the remedies provided for by ERISA's remedial scheme, even if those causes of action would not necessarily be preempted by section 514(a). See Aetna Health Inc. v. Davila, 542 U.S. 200, 214 n.4 (2004).

In accord with Congress's purpose of creating a uniform regulation, ERISA's civil enforcement provision is a comprehensive remedial scheme. Indeed, the Supreme Court has stated that § 502(a):

> represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal

10

> scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.

Davila, 542 U.S. at 208-09 (quoting Pilot Life Ins. Co., 481 U.S. at 54). "[I]f an individual brings suit complaining of a denial of [benefits], where the individual is entitled to such [benefit] only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B)." Davila, 542 U.S. at 210 (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987)). Consequently, a claim that "duplicates, supplements, or supplants" the remedies provided by ERISA runs afoul of Congressional intent and is preempted. Davila, 542 U.S. at 209 (citing Pilot Life Ins. Co., 481 U.S. at 54-56; Ingersoll-Rand Co., 498 U.S. at 143-45).

Neither of Plaintiff's claims is independent of his claim for benefits under the plan. With respect to the breach of contract claim, it is clear that Plaintiff's only complaint is about the denial of benefits promised under the terms of an ERISA-regulated employee benefit plan. After Plaintiff sought reassessment of the benefits decision under the plan and did not receive them, Plaintiff did not pursue his ERISA remedy but instead brought the present state-law claims. These are precisely the kinds of claims that the Davila Court held to be preempted under § 502(a). As with Plaintiff's breach of contract claim, the tortious interference claim is completely preempted because it attempts an end run around ERISA's exclusive enforcement mechanism. Plaintiff's complaint is that Unum Life, either on its own or because Unum Group tortiously interfered, failed to pay him benefits to which he claims he is entitled under the policy. (Amended Complaint ¶

11

21.) Plaintiff's only alleged damages in his claim for tortious interference with contractual relationships is for benefits due under the disability insurance policy and, thus, is dependent upon the policy. He has brought suit "only to rectify a[n allegedly] wrongful denial of benefits promised under [an] ERISA-regulated plan[]," not "to remedy any violation of a legal duty independent of ERISA." Davila, 542 U.S. at 214. Thus, even if Goldberg's claims were not preempted under § 514 of ERISA, his claims are completely preempted under § 502(a).

## IV. CONCLUSION

Accordingly, the Court **ORDERS** that Defendants' Motion to Dismiss be, and it is hereby, **GRANTED**. In addition, the Court will **GRANT**, without objection, Plaintiff's request to file a second amended complaint. The second amended complaint shall be filed by January 3, 2008.

/s/ George Z. Singal_____
George Z. Singal
Chief U.S. District Court Judge

Dated at Portland, Maine this 18th day of December, 2007.